**This order is SIGNED.**



**Dated: October 23, 2018**

————————————————

**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

---

*Prepared by:*

Matthew M. Boley (8536)
Jeffrey Trousdale (14814)
**COHNE KINGHORN, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone: (801) 363-4300
E-mail: mboley@cohnekinghorn.com
         jtrousdale@cohnekinghorn.com

*Attorneys for* debtor-in-possession
MOUNTAIN CRANE SERVICE, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 18-20225 |
| **MOUNTAIN CRANE SERVICE, LLC**, | Chapter 11 |
| Debtor. | Honorable Joel T. Marker |

## FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION
## OF DEBTOR'S PLAN OF REORGANIZATION

This matter came before the Court on October 23, 2018 at 10:00 a.m. (the

"**Confirmation Hearing**") to consider confirmation of the *Debtor*'s *Plan of Reorganization*

*dated August 13, 2018* [Docket No. 442] (as it may be modified pursuant to the Confirmation

Order, the "**Plan**"), to consider the *Motion for Entry of Order Approving Modifications to the*

*Debtor's Plan of Reorganization* [Docket No. 541] (the "**Motion to Modify**") and to consider

the *Stipulation Resolving Plan Confirmation Objection of Galena Equipment Rental, LLC and*

*Specifying Agreed Plan Treatment of its Secured Claim* [Docket No. 561] (the "**Galena**

**Stipulation**" ), all filed by Mountain Crane Service, LLC, debtor and debtor-in-possession (the

"**Debtor**") in the above-referenced chapter 11 bankruptcy case (the "**Case**").  Matthew M. Boley

and Jeffrey Trousdale appeared on behalf of the Debtor.  Other counsel and parties-in-interest noted their appearances on the record.

Based upon the evidence received at the Confirmation Hearing, the *Ballot Tabulation Register* [Docket No. 556], the *Declaration of Paul Belcher in Support of Confirmation of the Debtor's Plan of Reorganization* [Docket No. 564], the *Declaration of Gil A. Miller in Support of Confirmation of the Debtor's Plan of Reorganization* [Docket No. 565], *Notice of Resolutions to Actual and Potential Objections to Debtor's Plan of Reorganization* [Docket No. 566], stipulations filed by creditors withdrawing their objections to confirmation of the Plan [Docket Nos. 552, 555 and 561], stipulations resolving cure amount objections [Docket Nos. 554 and 560], other papers filed concerning the Plan [*e.g.*, Docket Nos. 463, 467, 468, 491, 511, 542, 545, 550, 559, 562 and 566], the statements of counsel and other matters of record, having inquired into the legal sufficiency of the evidence adduced, and good cause appearing, the Court hereby

**FINDS AND CONCLUDES**[1] as follows:

A.    <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>.  This Court has jurisdiction over the Bankruptcy Case[2] pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Bankruptcy Court, including, without limitation, all pleadings, papers and other documents filed, all orders entered, and the transcripts of, and all minute entries on the docket indicating the evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Bankruptcy Case.

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. Pro. 7052.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Plan.

{00408483.DOCX / }

C.      Transmittal and Mailing of Materials; Notice.  All due, adequate, and sufficient notices of the Plan, the Motion to Modify, the Confirmation Hearing, and the deadlines for voting on and filing objections to the Plan, were given to all known holders of Claims in accordance with the Bankruptcy Rules.  The Disclosure Statement, Plan, and relevant ballots were transmitted and served in substantial compliance with the Bankruptcy Rules and the Orders of this Court upon Creditors entitled to vote on the Plan, and such transmittal and service were, and are, adequate and sufficient.  No other or further notice of the Plan, the Motion to Modify or the Confirmation Hearing is or shall be required.

D.      Solicitation.  The solicitation of votes for acceptance or rejection of the Plan complied with §§ 1125 and 1126,[3] Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other rules, laws and regulations.  Based on the record before the Court in the Bankruptcy Case, the Debtor has acted in "good faith" within the meaning of § 1125, and is entitled to the protections afforded by § 1125(e).

E.      Distribution.  All procedures used to distribute the solicitation materials to the applicable holders of Claims and to tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the orders and local rules of the Bankruptcy Court, and all other rules, laws, and regulations.

F.      Creditors' Acceptance of Plan.  The Plan establishes thirty-six Classes of Claims or Interests.  All impaired Classes of Claims have accepted the Plan.  No Class of Claims has rejected the Plan.  A few holders of Claims initially voted to reject the Plan, but later changed their vote to accept the Plan.  In a few of these instances, the holders' acceptance of the Plan was conditional, but the conditions have been satisfied.

i.      Class 2 (General Unsecured Claims) voted to accept the Plan by (A) 99.4% in amount ($16,220,416.97 of $16,315,576.58) and (B) 98.6% in number (71 of 72).

---

[3]      Unless otherwise provided, all references to statutory sections in these Findings and Conclusions using the section symbol "§" are to the relevant sections of the Bankruptcy Code.

ii.     In light of the Galena Stipulation, all other Classes of Claims in which

ballots were returned [1, 6, 7, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 32,

33 and 34] voted unanimously to accept the Plan.  Classes 3, 4, 5, 8, 9, 10, 13, 26, 27, 29,

30, 31, 35 or 36 neither returned any ballots nor objected to confirmation.  As such, they

are deemed to have accepted the Plan.  In summary, all Classes of Claims and Interests

either have accepted by affirmative vote or affirmative stipulation, or are deemed to have

accepted the Plan.[4]

G.     Plan Complies with Bankruptcy Code.  The Plan, as supplemented and modified

by the Confirmation Order (as modified and supplemented, the "**Confirmed Plan**"), complies

with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

i.     Proper Classification.  The Claims placed in each Class are substantially

similar to other Claims in such Class.  The Confirmed Plan properly classifies Claims.  In

addition to Administrative Expense Claims and Priority Tax Claims, which are not

classified under the Confirmed Plan, the Plan designates various separate Classes of

Claims based on differences in their legal nature or priority.  Further, valid business,

factual and legal reasons exist for separately classifying the various Classes of Claims

under the Plan.  Finally, the Classes do not unfairly discriminate between holders of

Claims.  Thus, the Confirmed Plan satisfies §§ 1122 and 1123(a)(1).

ii.     Specify Unimpaired Classes.  There are no unimpaired classes under the

Confirmed Plan.  Thus § 1123(a)(2) is satisfied.

iii.     Specify Treatment of Impaired Classes.  Classes 1 through 36 are

designated as impaired under the Confirmed Plan.  Article 4 of the Confirmed Plan

specifies the treatment of the impaired Classes of Claims and Interests, thereby satisfying

§ 1123(a)(3).

---

[4]     See, e.g., In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988); In re John Kuhni Sons, Inc., 10-29038 RKM, 2011 WL 1343206 at *4 (Bankr. D. Utah Mar. 30, 2011); In re Jones, 530, F.3d 1284, 1291 (10th Cir. 2008); In re Armstrong, 292 B.R. 678, 684 (10th Cir. B.A.P. 2003).

iv.      <u>No Discrimination</u>.  The Confirmed Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect thereto, thereby satisfying § 1123(a)(4).

v.      <u>Implementation of Plan</u>.  The Confirmed Plan provides adequate and proper means for its implementation, thereby satisfying § 1123(a)(5).  Among other things, Articles 5 and 6 of the Confirmed Plan provide for: (a) the vesting of the property of the Debtor and its chapter 11 bankruptcy Estate in the Reorganized Debtor; (b) the formation, structure and management of the Reorganized Debtor; (c) the continuation of business operations by the Reorganized Debtor; (d) the consolidation of the Consolidated Subsidiary Entities into the Reorganized Debtor; (e) the appointment of a Plan Administrator to investigate and object to claims, to investigate and pursue certain litigation and to administer the Distribution Fund; and (f) distributions to creditors from the Distribution Fund, subject to the oversight and authority of the Plan Administrator.

vi.      <u>Corporate Charter Provision Inapplicable</u>.  Section 1123(a)(6) is not applicable, as the Confirmed Plan does not provide for the issuance of nonvoting equity securities.  Without limitation, the Confirmed Plan specifies that: (a) the Reorganized Debtor will remain a limited liability company; and (b) does not provide for the issuance of any non-voting "securities" of a corporation.  The Plan, as modified pursuant to the Motion to Modify, provides for the issuance of a Special Voting Interest to the Plan Administrator, which consists of a limited voting interest in the Reorganized Debtor.  Under the Plan, and except for the Special Voting Interest, Paul Belcher will retain 100% of the Membership Interests in the Debtor (but on a contingent and non-vested basis), subject to certain conditions precedent and subsequent described in the Plan.

vii.      <u>Selection of Post-Confirmation Manager and Plan Administrator</u>.  The Disclosure Statement and the Confirmed Plan designate and disclose Paul Belcher as the

President of the Reorganized Debtor and Gil Miller as the Plan Administrator.  Further, provisions in the Plan regarding the Reorganized Debtor's officers and the appointment of the Plan Administrator are consistent with the interests of Creditors and with public policy.  Thus, § 1123(a)(7) is satisfied.

   viii. <u>Additional Plan Provisions</u>.  The Confirmed Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions respecting (a) the assumption and/or rejection of executory contracts and unexpired leases, (b) the retention and enforcement by the Debtor of claims under chapter 5 of the Bankruptcy Code and under applicable non-bankruptcy law, and (c) modification of the rights of holders of secured claims, thus satisfying the requirements of § 1123(b).

   ix. <u>Bankruptcy Rule 3016(a)</u>.  The Confirmed Plan is dated and identifies the Debtor as its proponent, thereby satisfying Bankruptcy Rule 3016(a).

  H. <u>The Confirmed Plan and the Proponent Comply with the Bankruptcy Code</u>.  The Confirmed Plan complies with the applicable provisions of the Bankruptcy Code.  Likewise, the Debtor has complied with the applicable provisions of the Bankruptcy Code.  Thus, §§ 1129(a)(1) and (a)(2) are satisfied. Among other things:

   i. the Debtor is the proper proponent of the Plan under § 1121(c);

   ii. the Confirmed Plan complies, and Debtor has complied, generally with applicable provisions of the Bankruptcy Code; and

   iii. the Debtor has complied with the applicable provisions of the Bankruptcy Code, including § 1125, the Bankruptcy Rules and orders of the Bankruptcy Court in transmitting the Plan, the Disclosure Statement, ballots, related documents and notices, and in soliciting and tabulating votes on the Plan.

  I. <u>Good Faith</u>.  The Debtor filed the Bankruptcy Case in good faith and for a valid reorganizational purpose.  Additionally, the Confirmed Plan is proposed in good faith and not by

any means forbidden by law, and therefore complies with the requirements of § 1129(a)(3).  In determining that the Debtor filed the Bankruptcy Case in good faith and that the Confirmed Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Bankruptcy Case and the formulation of the Confirmed Plan. Among other things, the Court finds:

      i.    the Debtor filed this chapter 11 Case, and the Debtor has proposed the Confirmed Plan, for a valid reorganizational purpose;

      ii.    neither this Case nor the Confirmed Plan was filed as a litigation tactic or for delay;

      iii.    the Debtor has been, and is, actively prosecuting this Case;

      iv.    the Debtor proposed the Confirmed Plan with the legitimate and honest purpose of, among other things, restructuring the Debtor's financial affairs and providing a meaningful return to all classes of creditors;

      v.    the Confirmed Plan is the fruit of arms-length negotiations with creditors, including input from and discussions with approximately thirty (30) secured creditors, the Committee, the United States Trustee and other interested creditors;

      vi.    the Confirmed Plan contemplates that the claims of creditors will be satisfied either by (a) cash distributions to the holders of allowed claims from the continuation of normal business operations, or (b) in the event that the Debtor defaults in its obligation to contribute to the Distribution Fund, enforcement of the Plan Administrator Lien and potential liquidation of assets by the Plan Administrator, subject to the terms and conditions of the Plan;

      vii.    the Debtor has ongoing cash receipts and substantial assets to fund repayment of creditor claims under the Confirmed Plan;

      viii.    the Debtor has meaningful "cash flow" that will fund ongoing operations of the Reorganized Debtor as well as payments to creditors and other distributions under

the Confirmed Plan, as illustrated by the cash flow projections submitted by the Debtor and its professionals;

    ix.    there are available sources of cash flow to sustain the Confirmed Plan;

    x.    this is not a case involving a single creditor;

    xi.    rather, there are multiple creditors;

    xii.    the Debtor has a reasonable possibility of reorganization; and

    xiii.    the Confirmed Plan is feasible, practicable and there is a reasonable likelihood that the Confirmed Plan will achieve its intended results, which are consistent with the purposes of the Bankruptcy Code.

J.    <u>Payments for Services or Costs and Expenses</u>.  Any payment made or to be made under the Confirmed Plan for services or for costs and expenses in or in connection with the Bankruptcy Case prior to the Effective Date, including all fees and expenses incurred by Professionals, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4).

K.    <u>Manager(s) of the Reorganized Debtor</u>.  The Confirmed Plan and/or the Disclosure Statement identify Paul Belcher as the President and chief executive officer of the Reorganized Debtor, and also identify Gil Miller as the "Plan Administrator" for the Reorganized Debtor.  The proposed service of these individuals as post-confirmation officer and Plan Administrator is consistent with the interests of the holders of Claims and with public policy.  Therefore, the requirements of § 1129(a)(5) are satisfied.

L.    <u>No Rate Changes</u>.  The Confirmed Plan satisfies § 1129(a)(6) because the Confirmed Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

M.    <u>Best Interests of Creditors Test</u>.  The Confirmed Plan satisfies § 1129(a)(7) with respect to all Classes of Claims. All Classes have accepted the Plan as modified by the Confirmation Order, which modifications have resulted in the Confirmed Plan.  In addition, the

holders of all Classes of Claims and Interests will receive or retain under the Confirmed Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the property of the Estate was liquidated under chapter 7 of the Bankruptcy Code on such date.

i.       The Plan contemplates that each holder of an Allowed Class 2 Claim shall receive on account of his, her or its Claim cash distributions from the Distribution Fund, as described in section 5.5 of the Plan, on a pro rata basis, subject to the priorities in distribution set forth in section 5.6 of the Plan. Making certain assumptions regarding the total allowed claims in Class 2, the Debtor and its professionals project that Allowed Class 2 Claims may be paid up to 73% of the amount(s) of their Claims under the Plan. In contrast, making the same assumption regarding which claims in Class 2 may be Allowed, but taking into account additional claims that are anticipated to arise and be asserted against the Debtor in a chapter 7 liquidation scenario, holders of Allowed Class 2 Claims are projected to receive only between 13.7% to 32.9% of the amounts of their Claims in a chapter 7 liquidation

ii.      Class 33 Equity Interests are cancelled under the Plan, and will not receive any distribution under this Plan, *provided, however*, that Paul Belcher shall retain his Equity Interest (and his Equity Interest shall not be cancelled) subject to the conditions precedent and conditions subsequent set forth in section 5.4.1 of the Plan, including the contribution of new value in the form of approximately $15 million of personal net operating losses (NOLs) for the benefit of the Reorganized Debtor.  As illustrated by the Debtor's Liquidation Analysis and the discussion above, the holders of Equity Interests are not projected to receive any distribution in a chapter 7 liquidation.

In short, holders of Claims and Interests are anticipated to receive no less under the Plan than they would in a chapter 7 liquidation.

N.      Acceptance by Certain Classes.  All Classes of Claims have accepted the Confirmed Plan, as noted above, thereby satisfying § 1129(a)(8). No Class of Claims has rejected the Plan.

i.      Class 1 (Priority Claims) voted unanimously to accept the Plan.

ii.     Class 2 (General Unsecured Claims) voted to accept the Plan.  Seventy Ballots were cast by holders of Class 2 Claims to accept the Plan. Two ballots were returned by the holders of Class 2 Claims rejecting the Plan – by Alliant Aviation LLC and Terex Financial Services, Inc. Of the ballots returned in Class 2, the seventy accepting ballots represent (A) 89.6% in amount ($14,624,148.63 of $16,315,576.58), and (B) 97.2% in number (70 of 72).  Terex Financial Services, Inc. has, in writing, conditionally amended its ballot to accept the Plan.  Specifically, as stated in the *Notice and Stipulation Regarding Withdrawal of Terex Financial Services, Inc.'s Objection to Plan* filed October 17, 2018 [Docket No. 555], "Terex has agreed to, and will, withdraw its Objection to the Plan (including all objections stated therein), and … conditionally amends its Ballot to accept the Plan," all "subject to Court approval of the Founders Motion and the Modification Motion (or, in the alternative, the "carve out" of Terex from Section 12.4 of the Plan)." To the extent the conditions in the stipulation are satisfied, then "accepting" ballots in Class 2 increase to seventy-one accepting ballots represent approximately (A) 99.4% in amount ($16,220,416.97 of $16,315,576.58), and (B) 98.6% in number (71 of 72).

iii.    Class 6 (CCG), Class 7 (Chapman), Class 11 (Continental Bank), Class 12 (De Lage Landen), Class 14 (Equify), Class 15 (Everbank/TIAA), Class 16 (FNB Layton), Class 18 (Hincklease), Class 19 (MACU), Class 20 (People's Capital), Class 21 (SBA), Class 22 (SG Equipment Finance), Class 23 (Siemens) Class 24 (Signature Financial), Class 25 (Sterling), Class 28 (Trans Lease), Class 32 (Miscellaneous Secured

Claims), Class 33 (Equity Interests) and Class 34 (Convenience Claims) each voted

unanimously to accept the Plan.

iv.      Class 3 (Ally Financial), Class 4 (Amur), Class 5 (BBVA), Class 8

(Cheuck Yick), Class 9 (Chrysler Capital), Class 10 (CIT Bank), Class 13 (Direct

Capital), Class 26 (Sterling), Class 27 (Terex), Class 29 (Varilease), Class 30 (Wells

Fargo), Class 31 (Salt Lake County), Class 35 (Subordinated Claims) or Class 36

(Subordinated § 510(b) Claims) neither returned any ballots nor objected to confirmation.

As such, they are deemed to have accepted the Plan.  See In re Ruti-Sweetwater, Inc., 836

F.2d 1263, 1267-68 (10th Cir. 1988) (holding that non-voting secured creditor who did

not timely object to confirmation was deemed to accept the Plan).

v.      Class 17 (Galena) initially voted to reject the Plan, and objected to

confirmation.  Pursuant to the Galena Stipulation, however, Galena has accepted the Plan

and has withdrawn its objection to confirmation of the Plan.

O.      Treatment of Administrative Expense Claims and Priority Tax Claims.  The

Confirmed Plan satisfies the requirements of § 1129(a)(9).  Except to the extent the holder of a

particular Claim agrees to a different treatment, the Confirmed Plan specifies that Administrative

Expense Claims (including professional compensation) and Priority Tax Claims shall be paid as

mandated by § 1129(a)(9) (except to the extent that a holder agrees otherwise).

P.      Acceptance by at Least One Impaired Class.  All Classes of Claims have accepted

the Confirmed Plan, as shown by the Ballot Tabulation Register [Docket No. 556], the Galena

Stipulation and other stipulations and filings of record, and the acceptance of at least one of such

accepting impaired Classes has been determined without including the votes of any insiders, thus

satisfying § 1129(a)(10).

Q.      Feasibility.  The Confirmed Plan is feasible and complies with § 1129(a)(11)

because confirmation is not likely to be followed by a liquidation or the need for further financial

reorganization of the Debtor.  The Confirmed Plan offers a reasonable prospect of success and is

workable.  The Confirmed Plan provides that the Debtor will continue business operation after

the Effective Date.  The Debtor has presented credible evidence that the Debtor will have

sufficient "cash flow" to satisfy its operating expenses and debt obligations after the Effective

Date, and that it should have sufficient cash to fund the cash distributions contemplated under the

Confirmed Plan.  In short, there is a reasonable prospect that the Debtor's anticipated future cash

will be sufficient to fund the payments required under the Confirmed Plan, and that the Debtor

will be able to satisfy its obligations under the Confirmed Plan.  In summary, the evidence shows

that the Confirmed Plan offers a reasonable prospect of success, and is workable.  As such, the

requirements of section 1129(a)(11) are satisfied.

      R.      <u>Payment of Fees</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or will

be paid on or before the Effective Date pursuant to Section 2.2.3 of the Confirmed Plan, thereby

satisfying § 1129(a)(12).

      S.      <u>Continuation of Retiree Benefits</u>.  The Confirmed Plan complies with

§ 1129(a)(13).  The Debtor either (i) is not obligated to pay any retiree benefits subject to § 1114,

or (ii) is assuming all contracts with unions, including labor agreements and collective

bargaining agreements, under which such retiree benefits will be paid.

      T.      <u>No Domestic Support Obligations</u>.  The Debtor does not have any domestic

support obligations.  Therefore, § 1129(a)(14) is not applicable.

      U.      <u>Projected Disposable Income</u>.  The Debtor is not an individual.  Therefore

§ 1129(a)(15) is inapplicable.

      V.      <u>Transfers Will Comply with Nonbankruptcy Law</u>.  The Confirmed Plan complies

with § 1129(a)(16) because any transfers of assets to be made under the Confirmed Plan will be

made in accordance with applicable nonbankruptcy law that governs the transfer of property by a

corporation or trust that is not a moneyed, business, or commercial corporation or trust.

      W.      <u>Fair and Equitable; No Unfair Discrimination</u>.  All Classes of Claims have

accepted (or are deemed to have accepted) the Confirmed Plan.  As such, compliance with

§ 1129(b) is not required as to such accepting Classes of Claims.  In any event, the Confirmed

Plan is fair and equitable and does not discriminate unfairly as to any Class of Claims or

Interests, except as otherwise stipulated.

      i.      The Confirmed Plan satisfies at least one of the three alternatives under

§ 1129(b)(1)(A) as to each Class of Secured Claims.

      ii.      The Confirmed Plan further satisfies § 1129(b)(1)(B) as to the classes of

Unsecured Claims (including those in Classes 1, 2 and 34).

      a.      The Confirmed Plan contemplates that the holders of Allowed

Class 1 Claims will be paid in full.

      b.      The holders of Class 34 Convenience Claims will be paid 100% of

the Allowed amount of such claims on or before sixty days after the Effective

Date.

      c.      The Plan further contemplates that each holder of an Allowed

Class 2 Claim shall receive pro rata cash distributions from the "Distribution

Fund," as described in sections 4.2.2, 5.5, and 5.6 of the Plan.  Holders of

Allowed Class 2 Claims also were entitled to make a "Convenience Class

Election" under the Plan, which acts to convert their Claim(s) to a Class 34

Convenience Claim, to be paid 100% of the allowed amount of such Claim(s) (up

to $1,000). Further, the holder of any claim or interest that is junior to the claims

of Class 2 (including Class 33 Equity Interests, Class 35 Subordinated Claims,

and Class 36 Subordinated § 510(b) Claims) will not receive or retain under the

Plan on account of such junior claim or interest any property.

      iii.      All Class 33 Equity Interests will be cancelled under the Plan, *provided,*

*however*, that Paul Belcher shall retain his Equity Interest on a contingent and non-vested

basis (and his Equity Interest shall not be cancelled) subject to the conditions precedent

and conditions subsequent set forth in section 5.4.1 of the Plan, including the contribution

of new money or money's worth in the form of approximately $15 million in personal

NOLs for the benefit of the Reorganized Debtor. Because Paul Belcher is contributing

"New Value" to the Debtor in the form of the NOLs (in addition to his ongoing

employment by and leadership of the Debtor), Paul Belcher is not retaining or receiving

any property "on account of" his junior Equity Interest.

In short, the Plan is fair and equitable to the holders of all Classes of Claims and Interests, and

does not discriminate unfairly.

X.      No Other Plan.  No other chapter 11 plan is pending before the Court in this

Bankruptcy Case.  Accordingly, § 1129(c) does not apply.

Y.      Principal Purpose of Confirmed Plan.  The principal purpose of the Confirmed

Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act of 1933 (15 U.S.C. § 77e).  Therefore, the Confirmed Plan satisfies the

requirements of § 1129(d).

Z.      Small Business Case.  This Case is not a Small Business Case.  As such, §

1129(e) is not applicable.

AA.      Solicitation.  As evidenced by the docket in this Case, including *Certificate of

Service* [Docket No. 491], the Plan, the Disclosure Statement, and appropriate ballots were

transmitted and served on all parties entitled to copies of thereof (including all persons entitled to

vote on the Plan) in substantial compliance with the Bankruptcy Code, Bankruptcy Rules and

relevant orders of the Court.  It appears that all procedures used to distribute solicitation

materials for the Plan and to tabulate the ballots were fair and conducted in accordance with the

Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, and all other rules, laws,

and regulations.

BB.      Assumed Contracts.  The following are Assumed Contracts: (i) the executory

contracts and unexpired leases delineated in section 8.1.2 of the Plan; (ii) the executory contracts

and unexpired leases listed on the Schedule filed September 17, 2018 [Docket No. 511], with the

cure amounts for Williams Scotsman, Inc. and Intermountain Ironworkers[5] revised pursuant to Docket Nos. 554 and 560; (iii) the Debtor's amended and restated equipment lease, as equipment lessor, with National Equipment Services, as equipment lessee, as referenced in and attached to Docket No. 559; and (iv) the Debtor's amended and restated equipment leases, as equipment lessor, with Reliable Construction Services LLC and Reliable Crane Services, LLC, as equipment lessee, as referenced in and attached to Docket No. 562.

CC.    As to the Assumed Contracts (i) proper, timely, adequate and sufficient notice of the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1) and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6006 and 9014, (ii) such notice was good, sufficient and appropriate under the particular circumstances, and (iii) no other or further notice of the assumption and assignment of the Assumed Contracts is or shall be required.

DD.    The Debtor has demonstrated (i) that its determination to assume the Assumed Contracts is an exercise of its sound business judgment, and (ii) that the assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its Estate and its creditors.

EE.    The Debtor (i) has cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, with the meaning of 11 U.S.C. § 365(b)(1)(B).  Except as provided in the Debtor's stipulations with Williams Scotsman, Inc. and Intermountain Ironworkers [Docket Nos. 554 and 560] no cure payment or other cure or compensation is, or shall be, required with respect to the Assumed Contracts.

---

[5]    "**Intermountain Ironworkers**" means and refers to, collectively, (a) the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, Local No. 27, (b) Intermountain Ironworkers Tax-Deferral Plan, (c) Intermountain Ironworkers Pension Trust, and (d) Ironworkers Intermountain Health & Welfare Trust.

{00408483.DOCX / }

FF.      The Debtor has provided adequate assurance of its ability to perform in the future under the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(C).

GG.      The Proposed Modifications to the Plan Do Not Adversely Change Treatment of Creditors' Claims.  The proposed modifications to the Plan discussed and requested in the Motion to Modify and in the Galena Stipulation, and reflected in the Confirmed Plan, do not adversely change the treatment of the claim of any creditor that has accepted the Confirmed Plan. The modifications requested in the Motion to Modify and reflected by the Confirmed Plan are *not* of such a nature and effect that a creditor or interest holder who accepted the plan would be likely to reconsider its acceptance.  Stated another way, the modifications are not likely to trigger reconsideration *de facto*.  As such, the modifications are "immaterial."  In re American Solar King Corp., 90 B.R. 808, 824 (Bank. W.D. Tex. 1998) (quoting 8 Collier on Bankruptcy, ¶ 3019.03, at 3019-3 (15th ed. 1987)) ("A modification is material if it affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance.").

    i.      The Motion to Modify primarily serves (i) to remove section 12.4 from the Plan, subject to the Court's approval of the Founders Motion, and (ii) to clarify the authority of the Plan Administrator under the Plan in the event that the Debtor fails to comply with the conditions of the Plan regarding the disposition of Mr. Paul Belcher's contingent Equity Interests. The Motion to Modify does not adversely impact the return to any Classes of Creditors. The Motion to Modify provides needed flexibility to the Plan Administrator to transfer, sell, or assign my Equity Interests if they do not "vest" under the Plan, and grants the Plan Administrator additional authority to vote on significant matters for the Reorganized Debtor, such as merger or liquidation.

    ii.      The most material change to the Plan requested under the Motion to Modify is the removal and deletion of section 12.4 from the Plan.  That former section of the Plan contemplated that certain founding members and principals of the Debtor – Paul

Belcher, David Belcher, Vernon Belcher, and Lon Stam (collectively, the "**Founders**") –
could voluntarily subordinate their unsecured claims (but were not required to), and if
they did so in exchange they would receive the protection of an injunction against claims
under which they are co-debtors with the Debtor.  The deletion of section 12.4 from the
Plan does not adversely change the treatment of any Class of Claims or Interests that has
accepted the Plan, including Class 2, for several reasons.   First, as described in the
*Debtor's Motion for Entry of an Order Approving Settlement Agreement with Official
Committee of Unsecured Creditors, Paul Belcher, David Belcher, Vernon Belcher, and
Lon Stam* [Docket No. 536] (the "**Founder Settlement Motion**"), the Founders have
agreed to voluntarily subordinate the vast majority of their Class 2 Claims against the
Debtor and have stipulated to the removal of section 12.4 of the Plan.  In exchange, the
Debtor has agreed to waive all claims or potential claims against the Founders, including
"Avoidance Actions." Because none of the Founders were obligated to subordinate their
Claims under the Plan, because the potential recovery of claims against the Founders
would not augment returns to creditors under the Plan, and because the Founders now
affirmatively have agreed to subordinate their Claims in substantial part, the proposed
modifications agreed to under the modifications to the Plan contemplated by the Motion
to Modify do not adversely impact creditors.

iii.     Further, to the extent the striking of section 12.4 of the Plan removed an
incentive to induce the Founders to subordinate their claims voluntarily, they already
have subordinated their claims in substantial part under the Founder Settlement Motion.
Accordingly, the increase in distributions to unsecured creditors that was anticipated to
result from section 12.4 is provided, instead, by the settlement.

iv.     The other changes to the Plan requested under the Motion to Modify are in
the nature of clarifications, or merely address unknowns or contingencies.  None of them

adversely affect creditors.  Instead, they enhance the rights of creditors and the prospect of repayment.

v.     The Galena Stipulation resolves the treatment of Galena's Class 17 Secured Claim.  Where the Plan left uncertain whether Galena's claim was fully secured, and left open the possibility that a portion of the claim might be Allowed in Class 2 and dilute distributions to other Class 2 Creditors, the Galena Stipulation treats Galena's claim as fully secured and avoids the risk of an unsecured deficiency.  The Galena Stipulation also avoids potential rejection damages claims and avoids potential administrative claims that were threatened by Galena and its affiliate, Bigge Crane and Rigging Co. a/k/a Bigge Equipment Co. ("**Bigge**").

HH.     Accordingly, the Confirmed Plan shall be deemed accepted by all creditors who previously have accepted the Plan.  See Fed. R. Bankr. P. 3019(a) (if "the proposed modification does not adversely change the treatment of the claim of any creditor … who has not accepted in writing the modification, it shall be deemed accepted by all creditors … who have previously accepted the plan."); In re KD Company, Inc., 254 B.R. 480, 489 (10th Cir. BAP 2000) ("Renoticing modifications to a plan is not required if the modifications are immaterial.") (citing Beal Bank, S.S. B. v. Jack's Marine, Inc.  201 B.R. 376, 380 n. 4 (E.D. Pa. 1996); In re Cajun Electric Power Coop., Inc., 230 B.R. 715, 730 (Bankr. M.D. La. 1999) (citing In re American Solar King Corp., 90 B.R. 808, 823 (Bank. W.D. Tex. 1998); In re Penrod, 169 B.R. 910, 918 ( Bankr. N.D. Ind. 1994)); In re American Solar King Corp., 90 B.R. at 823 ("Further disclosure occurs only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan."); 5 Collier on Bankruptcy, ¶ 1127.03, at 1127-6 (15th ed. 1987) ("a new disclosure statement is not required in every case where a modification is requested")).

II.     The Galena Stipulation Should Be Approved.  There is a sound business purpose for the terms and conditions of the Galena Stipulation. Without limitation, the Galena Stipulation

preserves the Debtor's important and valuable business relationships with Galena and Bigge. The Galena Stipulation also permits the Debtor to retain five trucks and a crane subject to Galena's lien, and permits the Debtor that ability to pay the Galena Secured Claim over time at a reasonable rate of interest.

JJ.     The Galena Stipulation is fair, equitable and in the best interests of the Debtor and the creditors of the Debtor's chapter 11 estate.  The Debtor has exercised reasonable business judgment in negotiating and agreeing to the Galena Stipulation.  In determining that the Galena Stipulation is fair, equitable and in the best interests of the Debtor and its creditors, the Court has weighed and considered the factors described in Kopp v. All American Life Ins. Co. (In re Kopexa Realty Venture Co.), 213 B.R. 1020, 1022 (10th Cir. B.A.P. 1997), including (i) the probability of success, (ii) the potential difficulty and uncertainty regarding collection, (iii) the complexity of the legal and factual disputes and the potential expense of pursuing a non-consensual resolution, and (iv) the best interests of creditors.

KK.     The Court announced other findings of fact and conclusions of law on the record at the Confirmation Hearing, which findings and conclusions are incorporated herein by reference.

LL.     In summary, the Confirmed Plan complies with, and the Debtor has satisfied, all applicable confirmation requirements, and the Confirmed Plan will be confirmed by entry of the separate Confirmation Order.

MM.     Further, the Motion to Modify is well taken, and shall be granted without further notice or opportunity for hearing, as more specifically provided in the Confirmation Order.

NN.     Additionally, the Galena Stipulation is well taken, and shall be granted without further notice or opportunity for hearing, as more specifically provided in the Confirmation Order.

------------------------------------- END OF DOCUMENT -------------------------------------

{00408483.DOCX /}

## <u>DESIGNATION OF PARTIES TO BE SERVED</u>

Service of the foregoing **FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION** shall be served to the parties and in the manner designated below:

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CM/ECF System:

- Brett N. Anderson     bretta@blackburn-stoll.com
- James W. Anderson     jwa@clydesnow.com, jritchie@clydesnow.com
- Troy J. Aramburu     taramburu@swlaw.com, mrudiger@swlaw.com, docket_slc@swlaw.com, mwilkey@swlaw.com,bhatch@swlaw.com,awayne@swlaw.com
- Michael Barnhill     mcbarnhill@michaelbest.com, knpowell@michaelbest.com
- Douglas C. Bernstein     dbernstein@plunkettcooney.com, ssherbow@plunkettcooney.com
- Darwin H. Bingham     dbingham@scalleyreading.net, cat@scalleyreading.net
- Matthew M. Boley     mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- Joseph D. Brydges     jdbrydges@michaelbest.com, jlbrown@michaelbest.com;CourtMail@michaelbest.com
- Paul P. Burghardt     paulb@mountaincrane.com
- Mona Lyman Burton     mburton@hollandhart.com, intaketeam@hollandhart.com;slclitdocket@hollandhart.com;lcpaul@hollandhart.com
- Doyle S. Byers     DSByers@hollandhart.com, BKNoble@hollandhart.com
- Ryan C. Cadwallader     rcadwallader@kmclaw.com, tslaughter@kmclaw.com
- Joseph M.R. Covey     calendar@parrbrown.com;nmckean@parrbrown.com
- P. Matthew Cox     bankruptcy_pmc@scmlaw.com
- T. Edward Cundick     tec@princeyeates.com, docket@princeyeates.com;pam@princeyeates.com
- Tim Dance     tdance@swlaw.com, docket_slc@swlaw.com;snielsen@swlaw.com;bhatch@swlaw.com
- Douglas Farr     dfarr@swlaw.com, docket_slc@swlaw.com;bandrews@swlaw.com;sballif@swlaw.com
- Arlene N. Gelman     agelman@vedderprice.com, twilliams@vedderprice.com,ecf@vedderprice.com,arlene-gelman-5110@ecf.pacerpro.com,tarama-williams-8801@ecf.pacerpro.com
- John S. Gygi     john.gygi@sba.gov
- Michael R. Johnson     mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Alexander R. Kalyniuk
- David H. Leigh     dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- Douglas G. Leney     dleney@archerlaw.com
- David E. Leta     dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com

- Stephen W. Lewis     swlewis@agutah.gov
- Adelaide Maudsley     amaudsley@kmclaw.com, tslaughter@kmclaw.com
- Russell T. Monahan     russ@cooklawfirm.com,
  aw@cooklawfirm.com;monahanrr76048@notify.bestcase.com
- John T. Morgan tr     john.t.morgan@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Darren B. Neilson     darren@neilsonlaw.co
- John (Jack) T. Nelson     jnelson@mc2b.com, jcox@mc2b.com
- George R. Nemiroff     collections@sjlawcorp.com
- Rachel R. Obaldo     bk-robaldo@oag.texas.gov, sherri.simpson@oag.texas.gov
- Ellen E Ostrow     eeostrow@hollandhart.com,
  intaketeam@hollandhart.com;lahansen@hollandhart.com
- Stephen M. Packman     spackman@archerlaw.com
- Kenneth D. Peters     kpeters@dresslerpeters.com, rmccandless@dresslerpeters.com
- Adam H Reiser     areiser@cohnekinghorn.com
- Jerome Romero     jromero@joneswaldo.com
- Brian M. Rothschild     brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- Nathan Seim     seim.nathan@dorsey.com, ventrello.ashley@dorsey.com
- Jeffrey Weston Shields     jshields@joneswaldo.com,
  5962725420@filings.docketbird.com;hloveridge@joneswaldo.com
- Zachary T. Shields     zshields@strongandhanni.com
- Jeffrey L. Trousdale     jtrousdale@cohnekinghorn.com, nlakey@cohnekinghorn.com
- Jeff D. Tuttle     jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov
- Steven T. Waterman     waterman.steven@dorsey.com,
  bingham.karen@dorsey.com;ventrello.ashley@dorsey.com
- Bruce H. White     bwhite@parsonsbehle.com, chuston@parsonsbehle.com

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

☒     None

☐     If there are additional parties list the names and addresses of the additional parties.

☐     All parties on the Court's official case matrix.


/s/ Matthew M. Boley